HUDSON v. SALLEY et al.   (No. 7493.)

(Court of Civil Appeals of Texas. Galveston. Feb. 5, 1918.)

1. LANDLORD AND TENANT ⬳139(5)—AGREEMENT FOR WATER — SUFFICIENCY OF EVIDENCE.

Evidence *held* sufficient to support finding that lessor agreed to furnish the lessee necessary water for irrigating rice crop.

2. APPEAL AND ERROR ⬳1001(1)—REVIEW— FINDINGS OF FACT.

There being sufficient evidence to support the jury's findings, they cannot be disturbed on appeal.

3. TRIAL ⬳260(1)—SUBMISSION OF ISSUES— REPETITION.

There was no error in refusing to submit requested issues to the jury, the substance of them being submitted by the main charge, and being answered by the jury.

4. APPEAL AND ERROR ⬳742(6) — ASSIGNMENTS OF ERROR—PROPOSITION AND STATEMENT.

An assignment of error, in terms merely that judgment allowed plaintiffs interest to which they were not entitled, not being sufficient in itself to explain why they were not entitled to interest, and not being followed by proposition or statement, as required by Courts of Civil Appeals rule 31 (142 S. W. xiii), will not be considered.

Appeal from District Court, Matagorda County; Saml. J. Styles, Judge.

Action by S. H. Salley and another against C. M. Hudson and another, with cross-action by Hudson. From an adverse judgment, Hudson appeals. Affirmed.

Gaines & Corbett, of Bay City, for appellant. Thos. H. Lewis, W. C. Foulks, and W. C. Carpenter, all of Bay City, for appellees.

LANE, J. Appellees, S. H. Salley and A. M. Reed, instituted suit in the district court of Matagorda county against appellant, C. M. Hudson, and the Markham Warehouse & Elevator Company. They alleged in their petition that they entered into a verbal contract with defendant C. M. Hudson by the terms of which Hudson leased to them, for the year 1915, 270 acres of land situated on the west side and 185 acres of land situated on the east side of Trespalacios creek in Matagorda county; that by such contract Hudson agreed to furnish to them, Salley and Reed, all necessary seed rice to plant said land and to furnish, at his expense, all necessary and needful water to properly irrigate said rice, when the same was ready for water, and to continue to furnish such needful and necessary water in sufficient amount to grow and cause to grow and mature an average crop of rice under normal conditions upon said land; that by the terms of said contract plaintiffs, Salley and Reed, agreed to plant said two tracts of land to rice and to give it necessary and proper attention, to harvest and sack the same, and deliver to defendant Hudson one-half of said crops; that it was further agreed that Hudson was to pay them, Salley and Reed, 10 cents for each sack of rice threshed by them which belonged to Hudson, 12 cents per sack for hauling same from the farm to the warehouse, and 13 cents for each sack furnished by them to said Hudson's one-half of said rice crop; that the said Hudson employed plaintiffs, Salley and Reed, to construct three-fourths of a mile of levee on said land on the west side of said creek, and promised to pay them therefor the sum of $12; to construct a lateral on the east side tract for which he promised to pay them the sum of $6; that plaintiffs fully performed their part of said contract, and did furnish and provide at their own cost and expense 1,301 sacks for sacking said number of sacks of rice belonging to said Hudson; that they did actually thresh for him 1,301 sacks of rice, and that they did actually haul from the field to the warehouse 280 sacks of his rice, whereby he became bound, promised, and obligated to pay plaintiffs the respective sums of $169.13 for sacks, $130.10 for threshing and $33.69 for hauling as aforesaid, $12 for constructing levee, and $6 for constructing lateral—a total sum of $350.83.

Plaintiffs further alleged that Hudson failed to furnish all necessary and needful water to properly irrigate said crop of rice, when the same was ready for and needing water, and continue to so furnish such water as he had contracted to do, and that by reason of such failure said land did not grow and mature an average crop of rice, to their damage in the further net sum of $4,830.

They further alleged that they raised, harvested, sacked, and delivered to the Markham Warehouse & Elevator Company for the joint account of themselves and Hudson, in the proportion of one-half for themselves and the other one-half for Hudson, 2,632 sacks of rice, their one-half of the same being of the value of $5,264. Their prayer was for judgment against C. M. Hudson for the several amounts hereinbefore set out due them as damages caused by the failure of Hudson to furnish them with sufficient water to mature their crop, and for the several amounts due them by Hudson incident to and connected with the growing, harvesting, sacking, and hauling said rice crop, and for judgment jointly against both Hudson and the Markham Warehouse & Elevator Company for $5,264, the value of their one-half of said rice stored in said warehouse.

While the above-mentioned suit was pending in the trial court, appellant, C. M. Hudson, instituted suit in the same court against appellees, Salley and Reed, to recover the principal sum due upon certain promissory notes executed and delivered by Salley and Reed to him aggregating $2,770, to recover upon an open account due him by Salley and Reed, for interest due upon both sums, and for attorney's fees. It was shown by the petition that the money and things in payment for which said notes were given and accounts were due were furnished by Hudson to Salley and Reed to enable them to make a crop of rice on his lands hereinbefore described for the year 1915, which were rented by him to Salley and Reed for that year. The trial court consolidated said two suits, and they were tried as one suit.

After said suits were consolidated Salley and Reed filed an answer to Hudson's cross-action, and admitted that they were justly indebted to him for the sums alleged by him to be due, except in so far as they might be offset by plaintiffs' demands against Hudson.

C. M. Hudson, answering the allegations of the petition of Salley and Reed, denied that he had contracted and agreed to furnish water to irrigate the rice crop on the 185–acre tract; denied that Salley and Reed had suffered any loss whatever by reason of failure on his part to perform the terms of the rental contract entered into between him and Salley and Reed.

The rice raised, harvested, and stored in the warehouse was sold, and the proceeds thereof were deposited in court to be disposed of by the court by the judgment in said cause.

The cause was tried before a jury upon special issues submitted, to which they answered substantially as follows:

(1) "It was the understanding between the parties, Hudson, Salley, and Reed, that C. M. Hudson was to furnish water from the said A. J. Harty or Northern Canal and be responsible to Salley and Reed in the event the said A. J. Harty or Northern Canal should fail to give the

rice sufficient water to properly irrigate the same."

(2) The crop of rice of Salley and Reed grown on the 185-acre tract on the east side of the creek was damaged by reason of the failure of A. J. Harty or the Northern Canal to furnish sufficient water to properly irrigate the same after Salley and Reed were ready for and demanded water for said rice crop.

(3) Had said rice crop on said 185-acre tract been properly watered and at the time water was demanded by Salley and Reed, it would have produced six sacks per acre.

(4) To cut, shock, thresh, furnish sacks, to sack, sew, and place the rice grown on the 185 acres in the warehouse would cost 80 cents per sack.

(5) Salley and Reed failed to make an average crop of rice on the 70 acres of the 270 acres on the west side of the creek for the year 1915.

(6) An average crop on the 70 acres during the year 1915 would have been five sacks per acre.

(7) There were 14 acres of the 270-acre tract which made no crop because the crop on the same was destroyed by grass worms after Salley and Reed had said crop ready to receive water and before water was furnished to irrigate the same by Hudson or his agents.

(8) That had Hudson furnished Salley and Reed sufficient water at the proper time, after demand therefor, they, Salley and Reed, would have made 280 sacks of rice on the 70 acres not properly watered.

(9) To cut, shock, thresh, furnish sacks, sack, sew, and place the rice grown on said 270-acre tract in the warehouse would cost 80 cents per sack.

(10) C. M. Hudson was to bear one-half of the expense incurred for threshing and sacking the rice grown by Salley and Reed upon the two tracts of land.

To special issues Nos. 4, 5, and 6, submitted to them at the request of appellant, they answered in substance as follows:

(4) Six sacks of rice was an average yield on land of the kind and condition of the 185-acre tract during the year 1915.

(5) Salley and Reed did not make an average crop of rice on the 270 acres of land on the west side of the creek.

(6) If the worms had not eaten up the rice growing on about 70 acres of the 270-acre tract, it would not have made an average crop of rice.

Upon the evidence and findings of the jury to the issues submitted to them, the court rendered the following judgment:

"Taking into consideration the amounts submitted by plaintiffs to be due defendant C. M. Hudson, on his cause of action, consisting of notes and open accounts, the court does find that the plaintiffs, S. H. Salley and A. M. Reed, are entitled to recover of and from the defendant C. M. Hudson $1,811.84, being the amount for Salley and Reed after said plaintiffs appeared in court and first offered to and did enter a remittitur of $234.76, being the difference in the amount found by the jury and the amount alleged and proved in the petition for cutting, shocking, threshing, furnishing sacks, sacking, sewing the same, and placing the same in the warehouse chargeable against said Hudson, as damages for breach of contract to furnish plaintiff water as alleged in their petition, and the court further finds that the said C. M. Hudson is entitled to recover of and from the said S. H. Salley and A. M. Reed, the sum of $4,237.61, being the amount of principal, interest, and attorney's fees on the notes and the principal and interest on the accounts described in the said Hudson's pleading, and the court, striking a balance between the two findings, finds the balance in said Hudson's favor to be $2,425.77, and does here now render judgment against the said S. H. Salley and A. M. Reed for said sum together with a foreclosure of the landlord's lien against the proceeds of the sale of said rice deposited in and now remaining in the registry of this court.

"It is ordered, adjudged, and decreed that the clerk of this court do pay over to the said C. M. Hudson said sum less the costs hereafter adjudged against him, and that the balance of said fund at this date be paid to said Salley and Reed, less the cost adjudged hereinafter against them, with interest at the rate of 6 per cent. per annum until paid, for which execution may issue in favor of Salley and Reed against C. M. Hudson.

"It is further adjudged, and decreed that the costs be paid by the parties as follows, to wit: That Salley and Reed pay all costs in both cases up to the adjournment of this court at its June term, A. D. 1916, and that the parties pay the cost accruing since that time in equal proportions."

From this judgment C. M. Hudson has appealed.

By the first assignment it is in substance insisted that the trial court erred in not instructing a verdict for appellant:

(1) Because the undisputed evidence shows that the contract for water for the irrigation of the crop of Salley and Reed on the 185-acre tract on the east side of the creek was between Salley and Reed and A. J. Harty, or A. J. Harty for the Northern Canal Company, and not between Salley and Reed and appellant, and therefore appellant was not liable to Salley and Reed for any damages they may have suffered by reason of the failure of A. J. Harty or the Northern Canal Company to furnish sufficient water to irrigate their said rice crop on the 185-acre tract.

(2) Because there was no evidence showing that appellant had in any manner breached his contract with Salley and Reed, that the undisputed evidence shows that the crop of the appellees, Salley and Reed, on the 270-acre tract on the west side of the creek was well watered, and that that portion of same not destroyed by grass worms produced more than an average yield, and that the destruction of a portion of said crop by grass worms was not due to any act or omission of duty on the part of appellant.

[1] We overrule both contentions. There is ample evidence tending to show that appellant contracted with Salley and Reed to furnish them the land, the two tracts, the 185 acres on the east side of the creek and 270 acres on the west side of said creek, upon which they were to plant a crop of rice in 1915; that appellant was also to furnish all the seed rice necessary to plant such crop and to furnish all necessary and needful water to properly irrigate said rice crop on both tracts when the same was ready for water, and to continue to furnish such necessary water in sufficient quantity to grow and mature the rice crop of appellees.

There appears in the statement of facts a contract jointly executed by the Northern Ca-

nal Company and appellant, C. M. Hudson, of date May 4, 1915, by the terms of which the canal company agreed to furnish C. M. Hudson all necessary water to irrigate and mature the rice crop to be planted on the tract known as the 185 tract, on the east side of the creek, for a consideration of one-fifth of all the rice grown on said land. The mention of the names of the contracting parties and the general phraseology of this contract refutes the contention of appellant that Salley and Reed had contracted with Harty or the canal company to furnish them any water to irrigate their crop to be planted on said 185-acre tract, and tends to sustain the contention of Salley and Reed.

S. H. Salley testified that appellant told him that, if he could get Mr. Harty (for the canal company) to water the 185-acre tract, appellant would lease said land to Salley and Reed for the year 1915, that he went with appellant to see Harty, and, after Harty had agreed with appellant to furnish water for the land, he and his partner, Reed, agreed to farm the land for half of the crop; that appellant agreed to furnish the land, seed, and water for the consideration of the other half of the crop.

The evidence shows that the negotiations mentioned were some time in November, 1914, and that the contract between the canal company and appellant, Hudson, hereinbefore mentioned, was thereafter, to wit, on the 4th day of May, 1915, executed as a completion of the agreement of Harty to water the 185 acres for Hudson theretofore verbally made, as testified to by S. H. Salley.

We also think there was evidence sufficient to support the conclusion that appellees were not furnished water as soon as their crop was ready to receive the same, and that by reason of the failure of appellant to furnish them water a portion of their crop on the 270-acre tract was eaten up by grass worms, which could have been destroyed by water if it had been timely furnished, and that, had said worms been destroyed, and the water supply continued in sufficient quantity, appellees would have made an average crop of rice on said 270 acres, but that such water was not furnished, and they failed to make a crop on about 70 acres of said tract.

The evidence also shows that, had sufficient water been furnished, appellees would have made a crop of 6 sacks of rice per acre on the land known as the 185-acre tract, while as a fact they made 331 sacks only on the entire tract—less than 2 sacks per acre.

[2] Where there is sufficient evidence to support the findings of the jury and the judgment rendered, the appellate court is not at liberty to reverse such judgment.

The third, fourth, and fifth assignments complain of the refusal of the trial court to submit to the jury three special issues, Nos. 1, 2, and 3, requested by appellant, as follows:

(1) "What do you find was the real cause of the failure of the rice crop of the land on the west side of Trespalacios creek?"
(2) "Did C. M. Hudson understand that the Northern Canal Company or A. J. Harty was to furnish water for the irrigation of the 185 acres farmed by S. H. Salley and A. M. Reed, and that they were to take said canal company's contract for water?"
(3) "Did S. H. Salley and A. M. Reed understand that C. M. Hudson was to furnish water for the 185 acres east of Trespalacios creek?"

[3]. The substance of these requested issues was submitted to the jury by the main charge of the court, and were answered by the jury as shown by the answers 1 and 8, hereinbefore set out; therefore the court did not err in refusing to submit the requested issues to the jury.

By assignments 6 to 27, inclusive, and assignments 29 and 30, it is insisted that the trial court erred in receiving the answers of the jury to the questions submitted to them, and in rendering judgment thereon, because: (1) Such answers were not supported by any evidence; and (2) because the answers to some of the questions were in direct conflict with answers to other questions, and as a whole are conflicting, unintelligible, and insufficient as a basis for the judgment rendered.

We overrule all of these assignments. There was sufficient evidence to support the material answers of the jury. Some of the answers to some of the questions submitted were in some immaterial respects conflicting, but, when taken as a whole and in connection with the proven facts, they were sufficient as the basis for the judgment rendered by the court.

Issue No. 12 submitted by the court to the jury was as follows:

"How many sacks of rice would the said Salley and Reed have made on said number of acres had said C. M. Hudson or his agent furnished sufficient water after said demand to properly irrigate the same?"

After the charge of the court had been read to the jury and they had retired to consider of their verdict, the foreman of the jury made the following inquiry of the court in writing:

"Sir, was the question No. 12 referring to the whole of the west side 270 acres, or the amount we find to be damaged?
                    "W. M. Boney, Foreman."

The court answered this question in writing as follows:

"In answer to your question: It refers to that part of the 270 acres that was damaged, if any was damaged.        Samuel J. Styles, Judge."

Appellant by his twenty-eighth assignment insists that these proceedings constituted prejudicial error, but does not assign how the some was prejudicial, or give any reason why such proceedings constituted error. We are unable to conceive of any reason why such proceedings were erroneous, or how they could have injured the rights of appellant. The assignment is overruled.

[4] The thirty-first and last assignment is as follows:

"The court erred in entering the amount of the judgment, for the same is excessive in that it allows Salley and Reed interest to which they are not entitled, and fails to allow Hudson interest to which he is entitled."

This assignment is not followed by either a proposition or statement. By rule 31 for the Courts of Civil Appeals (142 S. W. xiii) it is provided that each proposition under an assignment shall be followed by a brief statement, in substance, of such proceedings, or parts thereof, contained in the record, as will be necessary and sufficient to explain and support the proposition. This assignment within itself is not sufficient to explain why Salley and Reed were not entitled to interest, or why Hudson was entitled to interest, nor is there any statement thereunder furnishing such explanation.

For the reasons pointed out, we decline to consider the assignment.

What has been said disposes of all of appellant's assignments.

We find no error in the trial of the cause; therefore the judgment of the trial court is in all things affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes